IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Case No.: 24-CR-287 (DLF) |
| NATHANIEL LAMAR NELSON SCOTT | ) | |
| _____ | ) | |

**OPPOSITION TO THE GOVERNMENT'S MOTION FOR
EMERGENCY STAY AND RESPONSE TO GOVERNMENT'S MOTION FOR
REVIEW OF RELEASE ORDER**

Nathaniel Scott, through undersigned counsel, respectfully request this Honorable Court deny the government's stay of release and order him released from custody. The magistrate court properly ordered his release under the strictest conditions that would reasonably ensure his appearance and the safety to the community.

Mr. Scott is a 36-year-old man with significant ties to the community. Until his arrest, he was employed as an eviction advocate where his work prevented many people from being evicted from their homes. He has family members in the Maryland and Virginia area. He has no prior convictions. To date, he has been detained for 40 days for an offense of which he has not been convicted, under conditions he has never experienced. Over the last 40 days, he has heard about the death of an inmate. Because of the type of offense that he is charged with, he has sought to be in protective custody so that he is not attacked.

The Bail Reform Act favors release. *United Stats v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992). Congress has not required mandatory detention for any offense. Rather, some offenses contain a rebuttable presumption. However, the presumption can be rebutted by "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142(g) . . . , including evidence

1

of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in 3142(g)(2)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).  For offenses where a minor is involved, the Bail Reform Act requires that "*any release order* shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii)."  18 U.S.C. § 3142 (c)(1)(B)(xiv) (emphasis added).  Therefore, Congress contemplated that individuals charged with offenses involving minors can be released.

The magistrate court followed the law and employed strict conditions under which Mr. Scott could be released.  As further support, the magistrate court relied on  *United States v. Willis*, No, 22-MJ-122releasethen-Chief Judge Howell upheld release of an individual charged with Coercion and Enticement of a Minor and Transfer of Obscene Materials to Minors, in violation of 18 U.S.C. § 2422(b) and 18 U.S.C. § 1470, respectively.[1]  Since the defendant in *Willis*, who faced more serious charges than Mr. Scott, was able to released under strict conditions, the magistrate court continued the detention hearing in order to allow the defense to address the government's concerns about Mr. Scott being released to his family home and being released in an area where there would be children around and the pretrial service agency could not conduct home visits. After the defense presented conditions that mirrored the *Willis* case, which included *inter alia* no internet access, third party custodian, no access to phones, and Mr. Scott being restricted inside the residence, in a single-family dwelling secluded from society, and home visits by the Maryland or Virginia Federal Pretrial Services Office, the magistrate court granted release.

---

[1] Mr. Willis was later charged with Attempted Sexual Exploitation of Children, in violation of 18 U.S.C. § 2251(a) and (e).  *See United States v. Willis*, Case No. 22-cr-241-RDM, Indictment at ECF No. 19.

The magistrate carefully considered the government's concerns in more than one hearing. First, the government argued that Mr. Scott could not be released to his home in Bowie, Maryland, because the D.C. Pretrial Services Agency could not conduct home visits. The defense responded by presenting several apartments outside of the 50-mile radius where Mr. Scott could stay, and the Maryland Federal Pretrial Services could conduct home visits.  At the second hearing, the government argued that the locations may have children living in the apartment buildings and the apartment building might have Wi-Fi access.  The defense then presented six single-family dwellings in Maryland and Virginia, which were outside the 50-mile radius and where no children resided.  Therefore, the magistrate court not only adequately considered the 3142(g) factors, but it also addressed every concern the government raised and restricted Mr. Scott's movement at the proposed residence by requiring him to remain indoors.

Hence, the magistrate court's proposed release conditions can reasonably ensure his appearance and the safety to the community.  The third-party custodian, Mr. Scott's mother, only worked a few hours a month and testified at the detention hearing that she does not need to work. In addition, she would be assisted by her husband, Mr. Scott's stepfather, who is an IT professional at the Department of Justice, whose expertise could ensure that Mr. Scott would not obtain access to the internet.  The presumption of detention was rebutted; therefore, the magistrate court's release order should be upheld.

## <u>Argument</u>

It is a well-established principle that criminal defendants should not suffer imprisonment on a charge for which they have yet to be convicted.  *See Stack v. Boyle*, 342 U.S. 1, 4 (1951) ("Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."); *see id.* ("The right to release before trial is

conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty"). In 1984, Congress enacted the Bail Reform Act to solidify this principle and to ensure that pretrial detention is utilized in only the rare cases in which community safety and flight are serious concerns. In passing the Act, Congress surely did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Rather, Congress intended to reserve pretrial detention for only "a small but identifiable group of particularly dangerous [persons] as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189. When implementing the provisions of the Bail Reform Act, courts have recognized that the Act clearly favors **release over pretrial detention**. *See United States v. Orta*, 760 F.2d 887, 890-892 (8th Cir. 1985); *United States v. Miller*, 625 F. Supp. 513, 516-17 (D.Kan. 1985); *see also United States v. Salerno*, 481 U.S. 751, 755 (1987) ("In our society liberty is the norm and detention prior to trial or without trial is a carefully limited exception").

The Bail Reform Act mandates courts to release defendants who are pending trial on personal recognizance or on an unsecured appearance bond. The only exception is if "the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Even if a court determines that personal recognizance or an unsecured appearance bond will not assure a defendant's appearance in court or protect the safety of the community, the court is not permitted to order the pretrial detention without further inquiry. When personal recognizance or an unsecured appearance bond are not sufficient, the court must consider imposing an alternative condition, or combination of conditions, that will assure the defendant's appearance in court and

the safety of the community.  *See* 18 U.S.C. § 3142(c).[2]  Examples of alternative conditions courts may consider imposing include employment or educational requirements, travel restrictions, stay away orders, a specified curfew, or a condition that the defendant refrain from the use of any controlled substance.  *See* 18 U.S.C. § 3142(c)(1)(B).

Under 18 U.S.C. § 3142(e)(3)(E), a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community where a defendant is charged with an offense involving a minor.  However, he Bail Reform Act imposes a "burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alitishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Such a burden is "not heavy" and only requires the production of "some evidence." *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014).

The Bail Reform Act does not bar release in offenses involving minors.  The Act recognizes that an individual can be released and when he or she is released, "any release order shall contain, at a minimum, a condition of electronic monitoring" in addition to requiring the releasee to

(1) abide by specified restrictions on personal associations, place of abode, or travel (18 U.S.C. § 3142(c)(1)(B)(iv));

(2) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense (18 U.S.C. § 3142(c)(1)(B)(v)), which would be easy to do in the case since there was no victim in fact;

(3) report on a regular basis to a designated law enforcement agency, pretrial services

---

[2] When imposing an alternative condition, or combination of conditions, the court must select the "least restrictive" condition(s).  *See* 18 U.S.C. § 3142(c)(1)(B).

agency, or other agency (18 U.S.C. § 3142(c)(1)(B)(vi));

(4) comply with a specified curfew (18 U.S.C. § 3142(c)(1)(B)(vii)); and

(5) refrain from possessing a firearm, destructive device, or other dangerous weapon (18 U.S.C. § 3142(c)(1)(B)(viii)).

18 U.S.C. § 3142(c)(1)(B).

Even in cases where a rebuttable presumption applies, it is ultimately the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). The government in this case only proceeded on safety of the community. Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has set sufficient evidence that Ms. Hoppe be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

## **ARGUMENT**

The Bail Reform Act lists fourteen conditions the combination of which the magistrate imposed to reasonably ensure the safety of the community. Hence, the release order should be upheld.

1.     *The nature and circumstances of the offense are no more serious than other cases where defendants have been released for more egregious conduct.*

Mr. Scott is charged with Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b). The charge stems from a conversation that occurred over several

days on a fetish website.  Mr. Scott did not have communication with the minor and expressed an interested in the undercover agent posing as a father.  ECF No. 1, p. 6.  The government heavily relies on the charge as a basis to detain Mr. Scott.  However, several courts have granted pretrial release to individuals who are charged with offenses involving a minor, including production, distribution, attempted coercion and enticement of a minor, and traveling with intent to engage in illicit sexual conduct.  *See, e.g., United States v. Vargas*, Case No.: 19-cr-20071, ECF No. 7 (D. Kan. 2019) (defendant charged with attempted production, distribution, and possession of child pornography released and allowed access to the internet in release conditions); *United States. v. Miller*, Case No.: 4:15-cr-31 (N.D. Ga. 2015) (defendant charged with violations of 18 U.S.C. § 2251(a) and (e)); *United States v. Prejean*, Case No.: 1:19-cr-350 (N.D. Ga. 2019)(defendant charged with violations of 18 U.S.C. § 2251(a) and (e)); *United States v. Burks*, Case No. 2:15-cr-407-TJH-2 (C.D. Cal.), ECF No. 82, (defendant charged along with other defendants, with several counts of violations of 18 U.S.C. § 2251(a) and (e), released subject to several conditions including to not "be found within 100 feet of any schoolyard, park, playground, arcade, or other place primarily used by children"); *United States v. Xiao*, Case No. 3:20-cr-17, Dkt. No. 16 (N.D. Ga. 2020) (completed CP production case); *United States v. Loth*, Case No. 1:14-cr-263, Dkt. No. 6 (N.D. Ga. 2014) (attempted coercion & enticement case); *United States v. Otoupal*, Case No. 3:16-cr-10, Dkt. No. 7 (N.D. Ga. 2016) (completed CP production offense); *United States v. Harthill*, No. 19-cr-217, ECF No. 35 (E.D. Wa. Apr. 7, 2020) (releasing defendant charged with production of child pornography with condition for electronic monitoring and home detention); *United States v. Brooks*, Case No. 4:15-cr-239-BRW, Dkt. No. 4 (E.D. Ark. 2015) (pretrial release in CP production case); *United States v. Burgess*, Case No. 20-mj-717 (W.D.N.Y. 2020) (releasing defendant charged with production of CP involving two alleged victims); *United States v. Maddox*,

Case No. 1:17-cr-167 (E.D. Cal. 2017) (releasing defendant charged with CP production over government's objection); *United States v. Oglesbee*, Case No. 22-cr-177 (D.D.C. 2022, ECF No. 10, (defendant charged with travel with intent to engage in illicit sexual conduct released to conditions requiring him to stay away from all minors and not use computers or other internet-capable devices).

As stated above, Congress has not mandated detention for individuals charged with these offenses.  Instead, Congress required that if released, the order must include electronic monitoring and other restrictions.  See 18 U.S.C. § 3142(c)(1)(B).[3]

The government cites the potential sentencing exposure of the offense as a reason to detain. However, Congress has not required the courts to consider this as a factor in weighing release.  In addition, in several cases where defendants were released, the defendant faced mandatory minimums and/or were eventually sentenced to a significant amount of time.  See, e.g., *Vargas*, Case No.: 19-cr-20071, ECF No. 7 (D. Kan 2019) (defendant sentenced to 180 months of imprisonment); *Xiao*, Case No. 3:20-cr-17 (N.D. Ga. 2020)(defendant sentenced to 216 months of imprisonment); *Prejean*, Case No.: 1:19-cr-350 (N.D. Ga. 2019)(defendant to 240 months of imprisonment).

The government also relies on Judge Berman Jackson's order of detention in *United States v. Breeden*, Case No. 15-MJ-506, as a basis to detain here.  See ECF No. 12 at 17.  However, in

---

[3] See the paragraph under subsection (xiv) :
> In any case that involves a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title, or a failure to register offense under section 2250 of this title, any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii).

that case, the defendant's mother required a computer with internet access to work from home. Judge Jackson importantly noted that

> [the D.C. Pretrial Services Agency] does not have the capacity to monitor compliance any of the other conditions, including whether defendant was ever left unsupervised in the home, whether he used a computer, whether he accessed sexually-explicit or dating websites or engaged in troubling chats or communications, and whether he had contact with any minors. In other words, it would be the defendant's parents, and the defendant's parents only, who would be charged with monitoring and enforcing the conditions of release.

*United States v. Breeden*, No. 15-MJ-0506 (AK-ABJ), 2015 U.S. Dist. LEXIS 191197, at *16 (D.D.C. Nov. 16, 2015).

Such concern has been alleviated in this case.  Here, Mr. Scott would not only be monitored by GPS monitoring and his mother who does not need a computer or internet-capable phone, but also by the Maryland or Virginia Federal Pretrial office which could conduct home visits.  Mr. Scott would not be left unmonitored.

2.    *The weight of the evidence is not unusual in this case.*

The government relies on the weight of the evidence as another basis to detain.  However, the Court should consider the evidence that is not present here.  There is no evidence that Mr. Scott exchanged child pornographic images with the undercover agent.  There has been no evidence of child pornography found on his phone or computer.

Even considering then-Chief Judge Howell's ruling in *United States v. Blackson,* Case No. 23-cr-25, an unpublished opinion, that weight of the evidence should be given equal weight to the other pretrial factors, the Court should also consider the lack of evidence heavily as well.  Many offenses involving minors have evidence of distribution and possession of child pornography, which are not present here.  Even if such evidence were present, it does not require detention.  Furthermore, then-Chief Judge Howell upheld release conditions in the *Willis* case, where the

9

defendant actually communicated with a minor on Snapchat and sent the minor illicit pictures of himself.  No such conduct is present here.

The government also cites *Blackson* for the proposition that "overwhelming, credible, helpful, and important" evidence "may increase" the defendant's risk of flight.  ECF No. 12.  The Court should place no weight on this argument for several reasons.  First, the government is not proceeding on a risk of flight basis to detain.  Second, Mr. Scott has several ties to the community and any risk of flight can be mitigated by requiring him to turn in his passport and restricting his movements.  Third, the conditions imposed require him to not leave the residence, which is the same requirement then-Chief Judge Howell imposed ("do not go outside").  Fourth, the weight of such evidence would in reality make a defendant *not flee*, after realizing the government has expansive abilities to monitor and gather evidence of any wrongdoing.  Fifth, the *Blackson* opinion relied significantly on  *United States v. Zhang*, 55 F.4th 141 (2d Cir. 2022), which involved a murder-for-hire plot where (1) there was overwhelming evidence of guilt, including witness testimony, cooperating witness testimony, video surveillance, financial and cell phone records and text messages; (2) the defendant posed a risk of flight since he had ties to other countries; and (3) he had past criminal conduct.  *Id.* at 146. Notably, nothing in the *Blackson* opinion changes the D.C. Circuit's ruling in *United States v. Munchel*, whether the high court explained that nothing in the conduct and overwhelming video evidence show that the defendants posed "an unmitigable future threat to public safety."  *Munchel*, 991 F.3d 1273, 1287 (2021).

3.    *Mr. Scott's history and characteristics favor release.*

As stated above, Mr. Scott has strong ties to the community and has a strong supportive network.  He is a college graduate.  He has no history of drug or alcohol use.  He has no record of failing to appear at court proceedings.  He was employed and worked to prevent individuals from

being evicted.  During the detention hearing, he explained that his work was important, and he was concerned that individuals could be evicted while he was detained.  He has never been detained as long as his has in this case.  In the *Willis* case, the government downplayed the defendant's lack of criminal history, and the defendant was released.

4.    *The conditions imposed reasonably assure the safety of the community.*

"[C]lear and convincing evidence" must support a finding that no conditions or combination of conditions exist to reasonably ensure the safety of the community.  18 U.S.C. § 3142(f).  "Even overwhelming evidence of guilt would not, alone, meet that test."  *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).  Furthermore, a theoretical danger will not suffice. *See United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community); *United States v. Debrum*, No. 15-cr-10292, 2015 WL 6134359, at *5, 2015 U.S. Dist. LEXIS 141777, at *13-14 (D. Mass. Oct. 19, 2015) (noting that the magistrate judge "theorized various situations in which the defendant may pose a risk to the public if he were released" but finding none of those dangers were "substantially present" in the case).

The government's attempt to distinguish the *Willis* case fails.  In fact, the *Willis* case further supports release in this case.  In that case, the defendant contacted a minor on a public social media website, where children can post images and messages.  Here, Mr. Scott is alleged to have communicated on a fetish website, where it does not appear that children can communicate.  There is also nothing to indicate that Mr. Scott sought out children to communicate with, as the defendant did in *Willis*.   While the defendant there did not travel to meet the minor, it is likely because the minor's mother contacted the authorities.  Here, the messages indicate that Mr. Scott had an interest in the adult purported father.

The government tries to further distinguish *Willis* on the basis that there the defendant has two retired parents who owned a home in Michigan.  ECF No. 12 at 22.  Here, Mr. Scott's mother testified that she was lucky that she did not have to work.  In addition, his stepfather is an IT specialist and is well-versed in disabling internet access.  His stepfather is required could utilize an secure hotspot to work which prevent anyone else from obtaining access to the internet.  Moreover, there is no indication that Mr. Scott would fail to abide by the rules.  To the contrary, he stated that he would not want his mother to be subject to violations for his failure to follow any conditions of release.  Furthermore, his mother indicated that she would want him to obtain therapy while on release, which is a condition that Court could impose.

The government also relies on *United States v. Hoppe*, Case No. 23-cr-102.  That case is distinguishable on several grounds.  First, the defendant there was charged with distribution of child pornography and coercion and enticement, the evidence of which is lacking in this case.  In addition, the defendant there was alleged to have violated D.C. Department of Corrections rules, which the Court weighed heavily as a basis for detention.

Mr. Scott's third-party custodian, in addition to the conditions of release, and with courtesy supervision by the Maryland or Virginia offices demonstrate that Mr. Scott can be released and the safety of the community can be reasonably ensured.

WHEREFORE, for these reasons and any such reasons that shall appear to the Court, Mr. Scott, respectfully requests that he be released.

Respectfully Submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
UBONG E. AKPAN
Assistant Federal Public Defender

625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500


## CERTIFICATE OF SERVICE

I, Ubong E. Akpan, certify that on this 16th day of July 2024, I caused a copy of the

foregoing Opposition to be filed through the Electronic Case Filing ("ECF") system and served a

copy of on counsel for the government through the ECF.


_____/s/_____
UBONG E. AKPAN
Assistant Federal Public Defender