UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NATHANIEL LAMAR NELSON SCOTT,<br><br>Defendant. | Case No. 24-CR-287 (DLF) |

GOVERNMENT'S REPLY TO THE DEFENDANT'S
OPPOSITION TO ITS MOTION FOR REVIEW OF RELEASE ORDER

The United States of America, by and through its undersigned counsel, respectfully submits this Reply to the defendant's Opposition to its Motion for Review of Release Order. For reasons that follow, among others, the defendant's arguments fail, and he should be detained pending trial.

**First,** this case is unlike *Willis* and closer to *Dhavale* and *Hoppe*. The defendant attempts to distinguish *Willis* by arguing that the defendant in that case had contact with a minor on a social media site accessible to children, whereas he communicated with an adult on a fetish website and did not "[seek] out children to communicate with." *See* Def.'s Mot. at 11. What the defendant glosses over is that he reached out to an adult who advertised himself as a "kinky daddy" looking to meet "very open-minded people," quickly moved to communicating with the man over an end-to-end encrypted messaging application, engaged in a discussion about the sexual abuse of the man's purported six-year-old daughter, made plans to meet the man in the District of Columbia for the purpose of raping that little girl, and then traveled into the District of Columbia in Maryland to act on his plan.

The defendant's travel is significant and takes his conduct beyond that of the defendant in *Willis*.[1] It shows that this was not some fantasy confined to the dark corners of the internet but that

---

[1] The defendant speculates that the reason why the defendant in *Willis* did not travel "is likely

the defendant intended to rape a child.  The defendant got in his car and traveled into the District of Columbia for that purpose, which was a concrete step in furtherance of the rape.  That puts his conduct much closer to that of the defendant in *Dhavale*, where the defendant engaged in explicit online conversations with a purported 13-year-old girl and then traveled from Virginia to the District of Columbia to have sex with her for money.  *See United States v. Dhavale*, No.19-MJ-92, 2020 WL 1935544, at *3 (D.D.C. Apr. 21, 2020).  The defendant's travel weighed in then–Chief Judge Howell's assessment of the defendant's dangerousness.  *See id.* at *4 ("Moreover, the government's proffer demonstrates that defendant actually traveled to Washington, D.C. with the intention of engaging in illicit sexual acts with the purported child.").  While the Court in *Dhavale* temporarily released the defendant due to the nascent COVID-19 pandemic, it found that all four statutory factors weighed heavily in favor of pretrial detention and that the defendant had not rebutted the presumption.  *See id.*  The defendant fails to address *Dhavale* in his Opposition.

Similarly, the defendant in *Hoppe* traveled with the expressed intention of sexually abusing a prepubescent girl.  *See United States v. Hoppe*, No. 23-CR-102, 2024 WL 1990452, at *3 (D.D.C. May 6, 2024).  The defendant suggests that Judge Contreras "weighed heavily as a basis for detention" the fact that the defendant in *Hoppe* had engaged in misconduct at the D.C. Jail.  *See* Def.'s Opp. at 12.  But the Court discussed the defendant's misconduct only secondarily.  In assessing the conduct for which the defendant was charged in the case, Court expressed significant concern about the fact that the defendant was alleged to have traveled for the purpose of raping a

---

because the minor's mother contacted the authorities." Def.'s Opp. at 11.  That appears to be unsupported by the record in *Willis*:  The Statement of Facts in support of the Complaint in *Willis* indicates that law enforcement assumed the minor victim's identity on social media and communicated with the defendant, who was trying to entice the minor victim to come to his residence for sex.  *See* ECF No. 1-1, *United States v. Willis*, No. 22-MJ-122 (D.D.C. May 27, 2022).  Ultimately, the reasons why the defendant in *Willis* did not travel are immaterial.  The defendant's conduct in this case is distinguishable because he *did* travel across state lines for the purpose of raping a six-year-old girl.

prepubescent child:

> For another thing, Defendant is not only charged with distributing child pornography—she is also charged with traveling to a hotel in Virginia with the intention of helping someone she believed to be a father sexually abuse his purported eight-year-old daughter. *See* [*United States v.*] *Wilson*, 217 F. Supp. 3d [165,] 176 [(D.D.C. 2016)] (finding fourth section 3142(g) factor weighed in favor of detention where defendant expressed interest in traveling to Washington, D.C. to engage in illicit sexual acts with a minor). Given Defendant's conduct—especially the detailed plans she made, and the concrete steps she took, towards attempting to sexually abuse someone she believed to be an eight-year-old girl—the Court finds that Defendant's release would pose a significant danger to a particularly vulnerable segment of the community: children. *See United States v. Burdette*, 813 F. Supp. 2d 1, 4 (D.D.C. 2011).

*Hoppe*, 2024 WL 1990452, at *5.

***Second*, the proposed conditions are neither as workable nor as comprehensive as in *Willis*.** In *Willis*, the defendant was released to the custody of both of his retired parents at a residence they had owned for 38 years. There was thus a stable residence with two custodians available, ensuring that there would be continuous coverage if one of the defendant's parents would need to leave the residence. Here, the proposal is that the defendant's mother will rent a residence in a remote location and live there with the defendant alone. This is markedly different from the situation in *Willis*. While the defendant's counsel has identified six potential addresses, an alternative residence has not yet been secured, so it remains theoretical, and the precise details are unknown. As some of the proposed options appear to be short-term rentals, there is a legitimate question about the stability of the residence. Moreover, the proposed conditions place an unrealistic burden on the defendant's mother, who would also be on 24/7 lockdown unless her husband could take time off work and travel to the location to relieve her of her duties.

In addition, the defendant in *Willis* had secured a psychologist for a psychosexual evaluation and proposed that he begin sex offender treatment, which was incorporated into his release conditions. The defendant responds that "his mother indicated that she would want him to obtain

therapy on release, which is a condition that [the] Court could impose." Def.'s Opp. at 12.  But unlike in *Willis*, the defendant here is not proposing these conditions and has taken no steps to facilitate their implementation.  These conditions in *Willis* represented an attempt toward rehabilitation and thus mitigating the risk posed by the defendant's release.

***Third*, no third-party custodian is appropriate in this case**.  "[I]t is generally true that, in cases 'involving illicit online conduct involving a minor, a defendant cannot establish that an appropriate third-party custodian exists, since, given the ubiquity of internet-capable devices, ensuring against continuing illegal conduct on release often presents insurmountable challenges.'"  *Hoppe*, 2024 WL 1990452, at *6 (quoting *Dhavale*, 2020 WL 1935544, at *5).  No third-party custodian can provide round-the-clock monitoring, meaning that "the absence of such small devices in [the] residence cannot be meaningfully verified on a continuous basis."  *Id.* (quoting *Dhavale*, 2020 WL 1935544, at *5).  And even if Pretrial Services in another jurisdiction were to agree to courtesy supervision and perform home visits, those occasional visits would do no more to ensure that the defendant was not accessing an electronic device when they were not looking.[2]

                                                  Respectfully submitted,

                                                  MATTHEW M. GRAVES
                                                  UNITED STATES ATTORNEY
                                                  D.C. Bar No. 481052

Dated: July 17, 2024           By:    */s/ Paul V. Courtney*
                                                  Paul V. Courtney
                                                  D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
                                                  Assistant United States Attorney
                                                  United States Attorney's Office
                                                  for the District of Columbia
                                                  601 D Street NW
                                                  Washington, D.C. 20530
                                                  (202) 252-1719
                                                  Paul.Courtney@usdoj.gov

---

[2] While the defendant argues "[t]here has been no evidence of child pornography found on his phone," Def.'s Opp at 9, the FBI's efforts to obtain an extraction from the defendant's phone remain ongoing.  The defendant did claim, however, that he has accessed child pornography.