**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE. NO. 24-cr-287-DLF** |
| | : | |
| | : | |
| **NATHANIEL SCOTT** | : | |
| **Defendant.** | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in sentencing the defendant, Nathaniel Scott. In June of 2024, the defendant traveled from Maryland to the District of Columbia for the purpose of sexually abusing a 6-year-old child. For that conduct, the United States asks that the Court sentence the defendant to 120 months incarceration, followed by a lifetime of supervised release. Such a sentence, which is at the midpoint of the Defendant's Sentencing Guidelines Range, appropriately balances the factors outlined in 18 U.S.C. § 3553(a), is "sufficient, but not greater than necessary to comply with the purposes of sentencing," and will provide long-term protection to the community from potential future crimes by the defendant.

## I.    Background

Beginning on May 25, 2024, Nathaniel Lamar Nelson Scott, the defendant, used a fetish website to contact someone who he believed was a "kinky daddy" looking for "very open minded people." Unbeknownst to Scott, that individual was a Task Force Officer with the Federal Bureau of Investigation Washington Field Office's Child Exploitation and Human Trafficking Task Force who was working in an undercover capacity as an Online Covert Employee (OCE). During their communications, Scott and the OCE exchanged messages via the fetish website, with Scott initially

asking: "So what are you looking to do with a perverse Daddy ?" The OCE responded, "Looking

to me[et] like minded and see where it goes. I am a very open taboo dad here. Let me know if you

wanna chat on [the encrypted messaging application]." On the same day, the chat communication

moved from the fetish website to a separate encrypted messaging application.

Between May 25, 2024, through June 5, 2024, the defendant and the OCE used the

encrypted application to discuss the sexual abuse of the OCE's purported daughter. When the

OCE told the defendant that his purported daughter was only six years old, the defendant

responded, "That's the perfect age." During the conversation, the defendant told the OCE that he

was interested in bathing with the OCE's purported daughter and asked whether she was still a

virgin, as well as questions about her body type and vagina.

On the morning of June 5, 2024, the OCE told the defendant that his purported daughter

would be with him that evening. During the conversation, the defendant stated:

> [I]f we are in person I'd want to introduce and maybe tickle her and grip her and
> molest her and kiss her then watch you too a bit then get comfy and lick her and
> rub my tip with you there to encourage me to embrace it and hope she has fun

The OCE responded, "If you want to do this, they best way is to meet by my place in public, then

I can FaceTime her and her her [sic] show her pussy, then we head walk up to my apt." The

defendant responded, "I want to lick every inch."

Scott and the OCE then discussed plans to meet up in the District of Columbia later in that

evening. The defendant stated, "I was just thinking, like what about taking a bath? I think that is

so hot." The OCE responded, "Yes I agree maybe a good way to start too, and the defendant

responded, "can't wait." The defendant later indicated that he would not be taking a shower after

work due to the plan to take a bath. The OCE and the defendant then agreed to meet at a bar in

Northwest Washington, D.C.

2

On June 5, 2024, the defendant drove from the State of Maryland into the District of Columbia and entered the bar where he had agreed to meet the OCE.  After exchanging pleasantries and ordering beers, the OCE told Scott that they needed to get back to the apartment because the OCE's purported daughter was home alone and that they could Facetime the child once outside. The defendant agreed and followed the OCE outside the bar, at which time he was arrested.

On October 16, 2024, the defendant entered a plea of guilty to one count of Travel with Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b).  Sentencing is scheduled for April 8, 2024.

## II.    A Sentence of 120 Months Appropriately Reflects the § 3553(a) Factors

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[1]  These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
(3) the kinds of sentences available;
(4) the applicable sentencing guidelines range for the offense;
(5) pertinent policy statements issued by the U.S. Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

---

[1] "Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range" as its starting point.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019).  A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

Here, the United States submits that a sentence of 120 months, at the midpoint of the defendant's Sentencing Guidelines' range, reasonably accounts for the factors established in § 3553.

### A. The Nature and Circumstances of the Offense

The nature and circumstances of the offense support a sentence within the Sentencing Guideline's range.  Scott's decision to travel from Maryland to the District of Columbia for the purpose of sexually abusing a six-year-old child is very serious offense which poses a significant danger to children in the community.  Scott spent ten days communicating online with the OCE about his sexual interest in children, noting that a six-year-old was the "perfect age."  He openly fantasized about having the opportunity to "lick her and rub [his] tip" on the child, and did not hesitate to ask to take a bath with the child, which he indicated would be "so hot."  Scott then followed through on his expressed sexual interest in this child, driving all the way to the District of Columbia to meet with the person who he thought would give him the opportunity to act out his fantasies.

Not only did Scott choose to travel to abuse a little girl, but he also demonstrated zero concern for a child who he had every reason to believe was being abused by a "kinky daddy."  The fact that the OCE did not have an actual child to abuse should be of no significance in determining Scott's sentence:  Scott's actions demonstrate that he was willing to sexually abuse a child, and it

is only happenstance that the "kinky daddy" he reached out to on a fetish website was an OCE rather than someone actually offering up a child for abuse.

Scott's online interactions with the OCE and his decision to drive to the District of Columbia to sexually abuse a six-year-old demonstrate that he is a danger to children both online and in the physical world. The defendant's actions weigh in favor of a substantial sentence and a sentence of 120 months appropriately reflects the nature and circumstances of the offense here.

### B. History and Characteristics of the Defendant

Defendant Scott's history and characteristics also support a sentence within the Sentencing Guideline's range. The United States acknowledges that Scott had a difficult and unstable upbringing and, nevertheless, overcame those obstacles to work as a productive member of society for many years. His resume reflects an individual who has sought to help others, even working from 2018-2019 in a human resources position at People Assisting the Homeless (PATH). *See* ECF No. 20, Presentence Report, 12/23/24, at 14.

At the same time, Scott has allowed his sexual predilections to dominate and direct his conduct, ultimately causing him to drive away an intimate partner and, eventually, leading to the conduct at issue in this case. *See* Psychosexual Evaluation and Risk Assessment, Dr. Travis Flower ("*Flower Evaluation*"), 2/15/25, at 6-7. According to the evaluation prepared by Dr. Travis Flower, "Mr. Scott meets DSM-5 criteria for multiple paraphilic disorders." *Flower Evaluation*, at 9. This includes meeting the criteria for "Pedophilic Disorder, Nonexclusive Type, which is "characterized by a person's feelings of recurrent, intense sexually arousing fantasies, urges, or behaviors involving sexual activity with prepubescent, generally age 13 or younger, which span at least six months." *Flower Evaluation*, at 9. Rather than make serious efforts to check his sexual impulses, Scott acknowledged participating in behaviors that only "encouraged his own fantasies

to become more extreme." *Flower Evaluation*, at 6.  He did so by engaging in "sexual role-play

conversations" with individuals, often strangers, online and over the phone.  *Id.*  Some of these

conversations were ongoing for years and, as Scott later reported, he discussed "increasingly

extreme topics with other people [which] contributed to his desensitization regarding the topics."

*Id.* This behavior preceded Scott's choice to engage in an online conversation with the OCE in this

case regarding the sexual abuse of a six-year-old girl and his decision to travel to the District of

Columbia with the expectation that he would have sex with that child.

According to Dr. Flower, Scott presents an "Above Average risk" of reoffending, "which

is associated with roughly twice the risk of recidivism as the average offender."  *Flower*

*Evaluation*, at 9.  In anticipation of sentencing, Dr. Flower evaluated Scott's risk of sexually

reoffending using both the Static-99R and the Stable-2007 risk assessment tools, both of which

are widely relied on for evaluating the future risk posed sex offenders.  When considering the

*integrated* results of the Stable-2007 results with the Static-99R score, Dr. Flower determined that

Scott presents "an overall risk rating of Above Average risk."[2]  This above average risk of

reoffending puts the community, particularly children, at a heightened risk when Scott is released,

and the Court should fashion a sentence that takes this risk level into account.

A sentence of 120 months incarceration, which is consistent with the Sentencing

Guidelines, reasonably balances the defendant's history and characteristics by acknowledging the

instability that he endured as a child, his positive contributions to society, as well as his above-

average risk of recidivism.

---

[2] Dr. Flower determined that when relying only on the stand-alone Static-99R score, Mr. Scott
would have an "'Average' likelihood of sexual recidivism, comparable to the typical offender."
*Flower Evaluation,* at 8.  However, relying only on the stand-alone Stable-2007 score, Scott
presents a "High-Risk" for recidivism. *Id.* at 9.  It is when the two scores are integrated that Scott
presents an "Above Average risk." *Id.*

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for consequences so that the punishment fits the crime, and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.*

The sexual abuse of minors is a serious offense that can have detrimental effects on victims in both the short and long term. While Scott's conduct did not involve the actual abuse of a child, that was only because his efforts were thwarted by an undercover officer. The defendant certainly did everything he could possibly do to attempt to abuse a six-year-old. An appropriate sentence in this case should account not only for the conduct the defendant actually engaged in, but for the conduct he was clearly intending to engage in when he traveled to the District of Columbia to meet someone whom he believed could provide him with an opportunity to abuse a child.

### D. The Need for the Sentence Imposed to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."). Here, deterrence of the defendant and others is particularly important where the conduct was not a product of a one-time lapse in judgement. Rather, the

defendant admits that he engaged in long-term communications with multiple "individuals who were also excited by paraphilic fantasies (involving minors or violence), and that this encouraged his own fantasies to become more extreme." *Flower Evaluation*, at 6.  In connection with a community of likeminded individuals, the defendant nurtured and fed his own fantasies involving children.  As he explained, this behavior resulted in "discussing increasingly extreme topics," leading to a "desensitization regarding the topics." *Id.*   This "desensitization" undoubtedly contributed to Scott's decision to travel to the District of Columbia for sex with a six-year-old.

The Court's sentence must account for the fact that there are entire online communities of people "excited by paraphilic fantasies (e.g., involving minors or violence)" who must be deterred from acting on those impulses.  Here, a sentence of 120 months incarceration is a reasonable way in which to deter individuals with a sexual interest in children, including Scott, from acting on that interest and potentially harming a child.

### E. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have been Found Guilty of Similar Conduct

Section 3553(a)(6) directs courts to consider avoiding *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." It "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010).  When an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities." *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017); *see also United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) (concluding that a within-Guidelines sentence for a child-pornography offense did not produce an unwarranted disparity when the

images distributed by the defendant "were much more aggressive and troubling than the images distributed by other offenders" who received lesser sentences).

The United States is seeking a within-Guidelines sentence of 120 months incarceration, which is consistent with the median sentence imposed for similar crimes by courts around the country.    According to the United States Sentencing Commission, Judiciary Sentencing Information (JSIN):

> During the last five fiscal years (FY2019-2023), there were 60 defendants whose primary guideline was §2G1.3, with a Final Offense Level of 31 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 60 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 117 month(s) and the median length of imprisonment imposed was 120 month(s).

Such a sentence is reasonable and presents no sentencing disparity at all, let alone an unwarranted one. Further, in *United States v. Astaphan*, 21-cr-194 (D.D.C.), Judge Moss sentenced a defendant to 123 months following a guilty plea to 18 U.S.C. 2423(b) where the defendant coordinated with an undercover agent to meet at a hotel where he would pay to have sex with a child.  A sentence in the mid-range of Scott's Sentencing Guidelines would place him squarely within the range imposed on other similarly situated offenders, including those in the District of Columbia.

### III.   Conclusion

The United States submits that a sentence of 120 months incarceration, at the middle of the defendant's Sentencing Guideline's range, is a reasonable sentence in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a).


Dated:  March 18, 2025                    Respectfully submitted,


EDWARD MARTIN
UNITED STATES ATTORNEY

 _/s/_ *Jocelyn Bond*
Jocelyn Bond, DC Bar No. 1008904
Assistant United States Attorney
601 D Street, NW
Washington, D.C. 20530